In re **WHEELING–PITTSBURGH STEEL CORPORATION, et al.,** Debtors in Possession.

**FIREMAN'S FUND INSURANCE COMPANY, et al., Plaintiffs-Appellants,**

**v.**

**WHEELING–PITTSBURGH STEEL CORPORATION, et al., Defendants-Appellees.**

Bankruptcy No. 85–793.
Motion No. 85–1653M.
Civ. A. No. 86–230.

United States District Court,
W.D. Pennsylvania.

Oct. 23, 1986.

Leon S. Forman, Dennis Replansky, Earl T. Stamm, Matthew J. Siembieda, Blank, Rome, Comisky & McCauley, Philadelphia, Pa., Lawrence N. Ravick, Pittsburgh, Pa., for Fireman's Fund Insurance.

M. Bruce McCullough, Buchanan Ingersoll Professional Corp., George Raynovich, Jr., Wheeling-Pittsburgh Steel Corp., Pittsburgh, Pa., for the debtors.

Paul Whitehead, Pittsburgh, Pa., Claude Montgomery, Booth, Marcus & Pierce, New York City, for United Steelworkers of America.

Joel M. Walker, Pittsburgh, Pa., Dennis Cronin, Wachtell, Lipton, Rosen & Katz, New York City, for the banks.

Michael J. Yurcheshen, Pittsburgh, Pa., Michael Walsh, Weil, Gotshal & Manges, New York City, for Ins. Co. Leaders.

Robert G. Sable, Lampl, Sable & Markoroff, Pittsburgh, Pa., Larry Handelsman, Stroock, Stroock & Lavan, New York City, for Unsecured Creditors' Committee.

Roger Lerner, Pension Benefit Guar. Corp., Washington, D.C., for Pension Benefit Guar. Corp.

B.A. Karlowitz, Pittsburgh, Pa., for Minority Shareholders.

Allen L. Lear, U.S. Dept. of Justice, Civil Div., Washington, D.C., for U.S. Dept. of Justice.

John A. Kincaid, Jr., Pittsburgh, Pa., for Equibank.

OPINION

GERALD J. WEBER, District Judge.

The many issues raised and rebutted by the briefs in this case may lead one to conclude that it is very complex, but the labrynthian paths of their briefs and not the essential issue remaining before this District Court on appeal give rise to this preliminary view. Ultimately in appellants' brief, p. 2, the main issue is stated as "What premiums are presently due and payable to appellant as expenses of administration." While it is also stated by appellee's brief, p. 8, fn. 3, that the only question fully considered and decided by the Bankruptcy Court in its Memorandum Opinion and Order (of November 6, 1985), 54 B.R. 772, was the question of relief from the automatic stay which has now become moot because of the expiration of the policies involved, the very briefs of the parties belie such assertions as these because they both argue how the Bankruptcy Court either rightly or wrongly decided various issues.

Appellee briefly raises a jurisdictional issue on this appeal, the appealability of the order, but does not argue it. Appellant replies that there is no merit to this issue but nevertheless argues that denial of a claim for administrative priority is about as final as you can get; nevertheless, the order would be appealable as an interlocutory order if the District Court, in its discretion, concludes that matters in the order are of sufficient importance and clearly represent the disposition of substantial rights, 28 U.S.C. 158; Bankruptcy Rule 8003(c). The District Court, as evidenced by this opinion does so conclude, hence the order is appealable.

Any reader of this opinion, apart from counsel and parties involved, will be puzzled by the foregoing observations. We will not recite the history of the various actions involved in this dispute at any length in this place, but attempt to define the facts pertinent to the main issue, and then state the main issue as we perceive it.

Appellants are an affiliated group of insurance companies which issued various policies of insurance to the debtor companies over a period of years. Some of these policies were in effect during 1985. On April 16, 1985 the debtor companies filed petitions in the Bankruptcy Court for this District for reorganization; the debtors remain in possession and are operating their business. The insurance policies providing coverage for the year 1985 remained in effect by virtue of the automatic stay provisions, and premiums thereon have been paid as an expense of administration by the debtors as installments became due until they expired by their own terms on December 31, 1985.

Appellants seek, by this proceeding, to have certain charges arising out of prior policies, and out of policies in effect during 1985 but arising prior to the petition, paid as an administrative expense of the estate.

Certain of the policies at issue here provide coverage under what is known in the business as a "standard retrospective premium arrangement." Under such a policy premiums are paid in parts, an annual base premium payable in installments based on estimate cost, and thereafter annual retrospective premiums based on actual losses experienced in a prior period. The amount of these losses is determined by an audit and a formula, and then is assessed in subsequent years as liabilities incurred in the year of coverage and are calculated until all losses under the policy are finally settled. In this category were the debtors' Pennsylvania Workmens Compensation policy for non-Pennsylvania occurrences, and the General Liability policy.

In addition to the policies in effect at the time of filing appellants had issued a number of other policies to debtors for various coverage for prior years.

All premiums on all policies were not paid in advance, or even in installments during the policy period. Some of these premiums unpaid were the retrospective assessments on the standard retrospective premium arrangement; some were unpaid installments on fixed premium policies.

The total premium claimed by appellees as an expense of administration is set forth in appellants' Exhibit A "Schedule of Current Premium Status" in the total amount of $5,942.086.

It appears clear from the record that with respect to all policies in effect at the time of filing currently due premiums and installments have been paid as an expense of administration until the time of expiration, January 1, 1986. There is some controversy over the Pennsylvania Workmens Compensation policy; appellants claiming that it became in default after the filing; the Bankruptcy Court Memorandum Opinion and Order (of November 6, 1985) finding at p. 4 that "both parties concede that debtors were in postpetition default on premium payments under this policy prior to its cancellation." Debtors insist in their brief (p. 4.; fn. 1): "Debtors never conceded and do not now concede that they were ever in default under the Workmens Compensation Policy." However, that policy was cancelled by mutual agreement of the parties effective May 30, 1985 upon the payment of the postpetition portion of the installment premium due for coverage from April 16, 1985 to May 30, 1985, as an expense of administration. Claims for certain prepetition coverage on that policy are being made here, along with other prepetition claims.

Debtors have always agreed that premiums for postpetition insurance coverage under the policies are payable as an expense of administration, as the actual and necessary cost and expense of preserving debtors' estate. Debtors resist the payment of any premiums for prepetition insurance coverage as an administrative expense and argue that they are to be treated as general unsecured claims in the debtors' plan of reorganization. Debtors further argue that all of appellants' claims arise out of prepetition occurrences covered under prepetition coverage.

If we may be allowed to simplify appellants' argument, they contend that all of the policies issued to the debtors, including those providing coverage for 1985, and

those for prior years, constitute a single integrated package of insurance. Therefore, because they provided postpetition coverage the insurers are entitled to payment of unpaid claims for prepetition coverages, both unpaid installments and retrospective premiums as an administrative expense.

This argument was based on the fact that all the policies contained default provisions which provided that a default on any one policy issued by these companies constituted a default on all other policies.

■ Under this clause the appellants filed a motion for relief from the automatic stay to permit cancellation of the policies still providing coverage during the administration on which current premiums were being paid. Relief was denied by the Bankruptcy Court. All further arguments concerning the automatic stay are now mooted by the expiration of all current policies by their terms.

In addition to their integrated package claim appellants also argue that the actions and delays of the Bankruptcy Court with respect to the automatic stay resulted in an assumption of the insurance contracts by the debtor and therefore the debtor should be required to cure all existing defaults and be liable to appellants for all insurance premiums due thereon as an expense of administration.

Appellants argue that the retrospective premium endorsements to several of the policies result in a continuing obligation often running for several years after the policy year for further losses accruing for occurrences arising during the policy year. In addition, certain premiums earned during the policy year were deferred, to be paid in installments over a period of years. The default clauses in the policies would entitle appellants to terminate the installment agreements and accellerate the balance due.

Other features of the policies are urged to support the integrated package argument, such as joinder of premiums for groups of policies.

It appears clear that no part of appellants claim of $5,942,086 as administrative expenses arise out of postpetition occurrences after April 16, 1986. Premiums for all coverage after that date have all been paid until the expiration or mutually agreed cancellation of those policies.

Both parties rely on *In the Matter of Jartran, Inc.*, 732 F.2d 584 (7th Cir.1984). There, an advertising agency committed itself in advance to Yellow Pages for advertising space for Jartran prior to Jartran's Ch. 11 petition. Jartran was to pay for the ads after they were published. Jartran filed its petition before the ads appeared. The advertising agency claimed as an administrative expense the cost incurred by it for the ads before the petition, although the ads were published after the petition. The court denied the claim, recognizing that even though Jartran enjoyed the benefit of the ads as a debtor in possession, it was Jartran's act before the petition that induced performance after the petition.

Two analogous cases involving payment on workmen's compensation premiums have come to the conclusion that claims of insurance carriers based on injuries suffered by employees prior to Chapter XI proceedings are not expenses of administration. *In the Matter of Transamerica Freight Lines, Inc.*, 2 B.C.D. 1565 (E.D. Mich.1976) and *In Re Penn Fruit*, 4 B.C.D. 84 (E.D.Pa.1978).

It is clear to this court that the claims in question do not qualify for administrative expense priority under Section 503(b)(1)(A) because these were not necessary for the preservation of the bankrupt estate and they do not result from a postpetition transaction.

■ We conclude that the question of whether or not the default provisions are enforceable in bankruptcy is not relevant to the issue of whether or not the appellant is entitled to be paid for all prepetition claims as an expense of administration. A postpetition default would only be relevant to appellant's right of cancellation of all of the postpetition coverage, a question that is

now mooted by the expiration or cancellation of the coverage in effect after the petition. We can see no way in which any alleged postpetition default can render claims for prepetition occurrences to be paid as expenses of administration under the Bankruptcy Code § 503(b)(1)(A) as "costs and expenses of preserving the estate."

On the issue of default the Bankruptcy Court examined the documentary and testimonial evidence at hearing to determine whether the policies remaining in effect postpetition could constitute an integrated nonseverable package. He found the Blanket Excess Policy and the Automobile Policy not part of the retrospective premium arrangement; he found the Pennsylvania Workmen's Compensation Policy, the non-Pennsylvania Workmen's Compensation Policy, and the General Liability Policy to be standard retrospective premium policies. He found the premium payment agreement on the Pennsylvania Workmen's Compensation Policy to be separate from the others. While one payment agreement covers two policies, the non-Pennsylvania Workmen's Compensation Policy and the General Liability Policy, this would only support an argument that these two policies constituted one integrated insurance package, but neither of these was in default. The period of coverage for the Pennsylvania Workmen's Compensation Policy was from July 15, 1984 to July 15, 1985 while all the other current policies covered the calendar year 1985.

We believe that the question of whether the policies in question constitute a non-severable package of insurance is a question of fact which was determined by the Bankruptcy Court after full hearing, briefing and argument. This is a finding of fact based on substantial evidence which we cannot find to be clearly erroneous. Bankruptcy Rule 8013. Therefore, it must be affirmed. *In Re Morrissey,* 717 F.2d 100 (3d Cir.1983).

Appellants' argument that the automatic stay order of the Bankruptcy Court resulted in the bankrupt's assuming the contracts or was an inducement to continue coverage requiring the bankrupt to cure any defaults can depend only on the arguments that the policies constitute a single, non-severable package of insurance which the Bankruptcy Court rejected, which rejection we have affirmed.

We find the automatic stay issue moot.

We find that the order of the Bankruptcy Court to be a final order appealable to this District Court.